AMELIA HOLT v. SAMUEL MURPHY, A. H. CLASSEN *et al.*

(Filed September 3, 1904.)

1. PUBLIC LANDS—Homestead Entry. A homestead entry, valid upon its face, constitutes such an appropriation and withdrawal of the land as to segregate it from the public domain, and, so long as it remains a subsisting entry, precludes it from subsequent entry.

2. SAME—Subsequent Application. A homestead application to enter land already covered by a subsisting homestead entry, can confer no rights whatever upon the applicant.

3. SAME—Appeal from Rejection of Entry. Where an application to enter land already covered by a homestead entry is received by the local land office and rejected, and an appeal is taken from such action, it is not a pending application that will attach on the cancellation of the previous entry, since the appeal cannot operate to create, as a matter of law, any right not secured by the application.

4. REVIEW—Finding Not Disturbed—Fraud. Where fraud is relied upon as a basis for equitable relief, and the trial court, after hearing all the evidence, finds that fraud has not been proven, this court will not disturb such finding, unless it is clearly against the weight of the evidence.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before C. F. Irwin, Trial Judge.*

*J. S. Jenkins,* for plaintiff in error.

*J. H. Everest,* for defendants in error.

### STATEMENT OF FACTS.

A brief history of this case in the land tribunal is as follows:

On April 23, 1889, Ewers White made homestead entry number six on the southwest quarter of section twenty-seven, township twelve north, range three west, at the United States land office at Guthrie, Oklahoma. On April 24, 1889. Charley J. Blanchard made homestead application for the same tract of land. On May 1, 1889, Vestal S. Cook made application for the same tract of land. The applications of Blanchard and Cook were rejected because of conflict with White's entry. On April 27, 1889, Blanchard filed an affidavit of contest, charging that White had entered the Territory of Oklahoma prior to twelve o'clock noon, April 22, 1889, in violation of the act of Congress approved March 2, 1889, and the President's proclamation issued pursuant thereto. On May 1, 1889, Cook filed an affidavit of contest, attacking White's entry, alleging that he was disqualified to enter said lands, and also alleging that Blanchard was disqualified from entering said lands, for the reason that he had entered upon said lands prior to twelve o'clock noon, April 22, 1889, in violation of the federal law. On July 16, 1889, the cause was tried before the local land office, and the register and receiver of said office recommended the cancellation of White's entry and dismissed the contests of both Blanchard and Cook.

All parties appealed from this decision to the Commissioner of the General Land Office; and on March 7, 1890, the decision of the local land office was affirmed. (*Blanchard v. White et al.*, 13 L. D. 66.) From this decision, within the time required by the rules of practice of the land tribunal, an appeal was taken to the Secretary of the Interior.

On March 11, 1890, Levi Holt, through an agent, made application to the local land office to file a soldier's declaratory statement for the land, which was suspended by the register and receiver, pending final action on the case of *Blanchard v. White et al.*, on appeal from the Commissioner of the General Land Office to the Secretary of the Interior.

On November 29, 1890, and while said contests were pending before the Secretary of the Interior. White relinquished his homestead entry, and the defendant Samuel Murphy filed his homestead entry.

Holt based his claim in the land tribunal solely on his application filed on March 11, 1890, four days after the decision of the Commissioner of the General Land Office, holding White's entry for cancellation, and before appeal was taken therefrom to the Secretary of the Interior. Murphy's claim is based entirely upon his homestead entry made November 29, 1890, on the filing of White's relinquishment.

It further appears that on June 3, 1889, and while White's homestead entry was still intact, William T. Mc-Michael entered upon said tract, with a view of establishing a residence and settlement thereon. On July 21, 1889, McMichael made application at the local land office to enter said tract of land, which application was rejected by the local office for being in conflict with White's homestead entry. On August 31, 1889, McMichael filed a contest or protest,

alleging that he had made settlement on the land in question on June 3, 1889; that he had lived there with his family until August 2, 1889, when he was ejected therefrom by the military authorities, at the instance of White; and he claimed that his rights were superior to those of White, Blanchard and Cook, all of whom he alleged were disqualified by reason of having entered the territory, during the prohibited period.

On February 15, 1892, a hearing was had before the local land office between McMichael and Murphy. The local land office decided the case in favor of Murphy and against McMichael, and the latter appealed to the Commissioner of the General Land Office. On January 18, 1893, the Commissioner of the General Land Office affirmed the decision of the local office. From this decision McMichael appealed to the Secretary of the Interior. On February 25, 1895, the Secretary of the Interior affirmed the decision of the general land office, but held that Murphy's homestead entry was subject to the rights of Levi Holt, by virtue of his having made application to file his soldier's declaratory statement on March 11, 1890. See *McMichael v. Murphy et al.,* 20 L. D. 535; see also 24 L. D. 431.

Pending the contest proceedings Levi Holt died, and the subsequent proceedings were had in the name of his heirs. The contest proceedings were finally closd in the land tribunal on April 29, 1897. On June 14, 1897, C. W. Ransom, who, it appears was attorney of record of Levi Holt and his heirs, filed a written waiver of the right of the heirs to perfect their rights and make homestead entry. upon said tract of land.

Thereafter Murphy made final proof,. and a patent was issued to him on January 19, 1898.

On the 16th day of September, 1901, Amelia M. Holt, plaintiff in error, commenced her action in the district court of Oklahoma county against Samuel Murphy and A. H. Classen, defendants in error, to declare a resulting trust, and that the defendants be decreed to hold the legal title in trust for the use and benefit of the plaintiff.

To the plaintiff's petition the defendants interposed a demurrer, on the ground that the petition did not state facts sufficient to constitute a cause of action, which demurrer was overruled, and exception reserved by the defendants. Thereafter each of the defendants filed a separate answer, consisting of a general denial, and the defendant Classen further alleged that he was an innocent purchaser for value, of the land in controversy, and that he had no notice or knowledge of any claims or equities of the plaintiff. The case went to trial on its merits, to the court, without the intervention of a jury, and the court found the issues in favor of the defendants and against the plaintiff, and rendered judgment in accordance therewith. A motion for a new trial was duly filed, was considered and overruled by the court, an exception reserved by the plaintiff, and the cause is brought here by the plaintiff for review.

Opinion of the court by

HAINER, J. : The right of the plaintiff in error to enter the land in controversy is based upon the application of Levi Holt, filed March 11, 1890, four days after the decision of the Commissioner of the General Land Office holding White's entry for cancellation, and before appeal was taken

therefrom. However, White appealed from the decision of the Commissioner of the General Land Office to the Secre-, tary of the Interior within the time required by the rules of practice, and hence his homestead entry was not cancelled pending such appeal, and therefore his entry remained intact upon the records of the land office until he voluntarily relinquished on November 29, 1890, more than six months after Holt had made application to the local land office to file his declaratory statement.

In the case of *McMichael v. Murphy et al.,* 20 L. D. 535; the Secretary of the Interior held that the application of Holt to enter the land, made after the date of the decision of the Commissioner of the General Land Office, and within the time allowed for appeal, should be received, but not placed of record until after the time for appeal had expired, and the rights of the entryman on such appeal determined by the department. In other words, that such application should be received subject to the rights of the entryman on the appeal. And in enunciating this doctrine, the Secretary followed the former rulings of the department in the cases of *John H. Reed,* 6 L. D. 563, and *Henry Gauger,* 10 L. D. 221.

In the case of *Cowles v. Huff,* 24 L. D. 81, decided January 30, 1897, the Secretary of the Interior decided that:

"An application to enter should not be received during the time allowed for appeal from a judgment cancelling a prior entry of the land applied for; nor the land so involved held subject to entry, or application to enter, until the rights of the entryman have been finally determined."

And in this case, the doctrine announced in the case of *Henry Gauger,* 10 L. D. 221, and other cases following it, was expressly overruled.

In *Cowles v. Huff supra,* the Secretary uses the following language:

"In the case at bar, Hur made his application to enter while Moore's entry was still in existence, and continued to exist for over a year and a half thereafter. His application was rejected, and he appealed. The question is, whether he acquired any rights under his application under the law, or rulings of the departments. This question can best be determined by reference to the rulings of the department and courts.

"The department has repeatedly held that an entry segregates the land covered thereby, and so long as such entry exists, it precludes any other disposition of the land. (*Whitney v. Maxwell,* 2 L. D. 98; *Schrotberger v. Arnold,* 6. L. D. 425; *Allen v. Curtis,* 7 L. D. 444; *James A. Forward,* 8 L. D. 528; *Russell v. Gerold,* 10 L. D. 18; *Swims v. Ward* 13 L. D. 686; *Hanscomb v. Sines et, al.,* 15 L. D. 27; *Faulkner v. Miller,* 16 L. D. 130.)

"The courts have held the same view. (*Witherspoon v. Duncan,* 4 Wall. 210; *Hastings and Dakota R. R. Co. v. Whitney,* 132 U. S. 357; *Starr v. Burk,* 133 U. S. 541, 548.)

"If the land covered by a substituting entry is not subject to disposition, it follows that an application to enter such land confers no rights whatever upon the applicant. If such application shall be rejected, and an appeal be taken from such action, it is not a pending application that will attach on the cancellation of the previous entry, for the appeal cannot operate to create any right not secured by the application itself. See *Patrick Kelley,* 11 L. D. 326; *Goodale v. Olney* (on review), 13 L. D. 498; *Maggie Laird* Id. 502; *Holmes v. Hockett* 14 L. D. 127; *Swanson v. Simmons,* 16 L. D. 44; *Mills v. Dally,* 17 L. D. 345; *Cook v. Villa* (on review), 19 L. D. 442; *Walker v. Snider,* (on review), Id. 467; *Gallagher v. Jackson,* 20 L. D. 389; *McMichael v. Mur-*

*phy et al.,* (on review), Id. 535; *McCreary v. Wert et al.,* 21 L. D. 145.

"In view of these authorities, it is held that Huff did not acquire any rights, either by his application to enter, or by his appeal."

In *McMichael et al., v. Murphy,* 12 Okla. 155, this court said:

"A homestead entry, valid upon its face, constitutes such an appropriation and withdrawal of the land as to segregate it from the public domain, and precludes it from subsequent homestead entry or settlement until the original entry is cancelled or declared forfeited; in which case the land reverts to the government as a part of the public domain, and becomes again subject to entry under the land laws of the United States."

And the same rule was followed in *Hodges v. Colcord et al.,* 12 Okla. 313. And this doctrine was also upheld by the recent decision of the supreme court of the United States, affirming the decision in the case of *Hodges v. Colcord,* 193 U. S. 192.

Applying these decisions to the case at bar, it follows that, since Holt mads his application to enter said tract of land while White's homestead entry was intact, and remained so for more than six months thereafter; Holt or his heirs could acquire no rights whatever by virtue of his application.

But it is contended by the plaintiff in error that the defendants Murphy and Classen had entered into a fraudulent conspiracy with C. W. Ransom to deprive the heirs of Holt of the right of perfecting the application which had been made by the agent of Levi Holt on March 11, 1890. While we do not deem this contention necessary to the de-

termination of the cause it is sufficient to say that the district court heard the evidence offered on behalf of the plaintiff and the defendants, and found for the defendants.

It is the settled rule of this court that where a controverted question of fact is submitted to the court, and the court after hearing the evidence, making a finding thereon, and the evidence reasonably sustains such finding, it will not be disturbed by this court.

In *Ellison v. Beannabia,* 4 Okla. 347, in passing upon this question, the court said:

"Under the code of civil procedure, the court now hears oral testimony in chancery cases, and like a jury, considers the witnesses, observes their intelligence and capacity, their fairness or bias, their manner and characteristics, and has thus opportunities for judging the value of the testimony, such as this court cannot have. The rule is, therefore, here adopted, as in other states which have the same practice act, that a finding of fact by the court is equivalent to a verdict by a jury; and if there is testimony to support the material allegations of the petition, this court cannot disturb the finding and judgment even though the finding of fact by the trial court might be contrary to the judgment of the appellate court. (*Beaubien et al., v. Hindman,* 37 Kan. 227; *Mulhall v. Mulhall* 3 Okla. 252, 41 Pac. 577; *Ruth v. Ford,* 9 Kan. 17; *Beal v. Codding,* 32 Kan. 107; *K. P. Railway Co. v. Kunkel,* 17 Kan. 145; *Walker v. Eagle M'f'g.* Co. 8 Kan. 397; *Perea v. Barclay.* [N. Mex.] 27 Pac. 507.)"

In *McKennon, Admr. v.    Pentecost,* 8 Okla. 117, the court said:

"Where an issue of fact is tried by a court without a jury, and a general finding is made upon such issue by the court, upon oral testimony, such finding is a finding of every special thing necessary to be found to sustain the general finding, and, if there be any evidence to sustain it, such find-

ing is conclusive upon this court upon all disputed and doubtful questions of fact."

See also *Craggs et al., v. Earls,* 8 Okla. 462.

In *Overstreet and Rock, Island Implement Co. v. Citizens Bank* 12 Okla. 383, the court said:

"Where fraud is relied upon as the basis for equitable relief and the trial court, after hearing the evidence, finds that fraud has not been established, the appellate court will not disturb such finding, unless it is clearly against the weight of evidence."

In our opinion, the district court was warranted in finding that the allegations of fraud in the petition were not sustained by the evidence.

We therefore hold that:

1. A homestead entry, valid upon its face, constitutes such an appropriation and withdrawal of the land as to segregate it from the public domain, and, so long as it remains a subsisting entry. precludes it from subsequent entry.

2. A homestead application to enter land already covered by a subsisting homestead entry, can confer no rights whatever upon the applicant.

3. Where an application to enter land already covered by a homestead entry is received by the local land office and rejected, and an appeal is taken from such action, it is not a pending application that will attach on the cancellation of the previous entry, since the appeal cannot operate to create, as a matter of law, any right not secured by the application. And

4. Where fraud is relied upon as a basis for equitable relief, and the trial court, after hearing all the evidence, finds that fraud has not been proven, this court will not disturb

such finding, unless it is clearly against the weight of the evidence.

It follows that the plaintiff failed to allege or prove a cause of action and the judgment of the district court is therefore affirmed.

Irwin, J., who presided in the court below, and Burwell, J., not sitting; all the other Justices concurring.